## Case No. 5,535.

### GOODENOW v. MILLIKEN et al.

[1 Hask. 348.][1]

District Court, D. Maine. July, 1871.

EQUITY—FRAUDULENT PREFERENCE—SUIT BY ASSIGNEE IN BANKRUPTCY TO RECOVER ASSETS.

In equity, money paid by a debtor to his creditor as a fraudulent preference under the bankrupt act of 1867 [14 Stat. 517] may be recovered by the assignee, although the same might also be recovered in an action at law.

In equity. Bill by an assignee [Henry C. Goodenow], charging that the bankrupt, within four months of his bankruptcy proceedings, being insolvent and in contemplation of insolvency or bankruptcy, with intent to give a preference to the respondents [Seth M. Milliken and others], who were his creditors, paid to them $175.00 in money and delivered to them a horse in full payment of their debt in fraud of the bankrupt act, they at the time having reasonable cause to believe their debtor to be insolvent, both of which they refused to surrender to the complainant upon demand. The bill sought discovery from the respondents of the circumstances and their intent touching the matter alleged, and prayed that they be decreed to pay to the complainant the money so received by them, as stated, and to deliver to him the horse mentioned or be charged with its value. To so much of the bill as sought a recovery of the money received by them, the respondents demurred for want of equity; and to that portion of the bill praying for a return of the horse or its value, the respondents pleaded that they had sold the horse and received its value in money before the bill was filed, and that the court had not jurisdiction in equity to give relief, as the complainant had a plain and adequate remedy at law. The cause was set for hearing and heard upon the sufficiency of the demurrer and plea.

Thomas H. Haskell, for orator.
William L. Putnam, for respondents.

FOX, District Judge. The allegations in complainant's bill clearly present a fraudulent preference under the 35th section of the bankrupt act. It is conceded that the district court has conferred upon it by the provisions of the bankrupt act, the most extensive and complete powers of a court of equity in the adjustment and settlement of the bankrupt's estate, and in all acts, matters and things to be done under and in virtue of the bankruptcy, and that its authority in this behalf is co-extensive with that of the courts of equity in England. It has been repeated-

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

ly held by the supreme court of the United States, that the equity jurisdiction of the courts of the United States is not regulated by or dependent upon the equity powers of the respective state courts, but depends upon what is a proper subject of relief in the courts of equity in England. It is claimed however, that this bill presents a case, under the judiciary act of 1789 [1 Stat. 73], which declares "that suits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law." That from an inspection of the bill, it appears that a suit at common law could be maintained by the complainant for the recovery of the money paid by the bankrupt in fraud of the act, and also for the amount realized from the sale of the horse, or his actual value as the complainant might elect. The supreme court of the United States, has repeatedly said "that the above provision in the judiciary act is merely declaratory, making no alteration whatever in the rules of equity on the subject of legal remedy. It is not enough that there is a remedy at law, it must be plain and adequate, or in other words, as practical and efficient to the end of justice and its prompt administration as the remedy in equity." I have no doubt that an action at law could be maintained by this complainant, but I feel equally confident that under the circumstances he had an election and can sustain the present bill.

The bill is founded on fraud. The charge is, that the respondents in fraud of the provisions of the bankrupt act, received the money and horse from the bankrupt in payment of their claim against him; and the purpose and scope of the bill is to invalidate and set aside this fraudulent proceeding, and to obtain such relief therefrom in money or by return of the property as the court may hold the assignee is entitled to.

In Bean v. Smith [Case No. 1,174], Judge Story says, "There are many cases in which courts of law and equity exercise a concurrent jurisdiction, and the judiciary act never intended to disturb that jurisdiction. In such cases, it is supposed that the remedy at law is not adequate and complete for all the purposes for which the plaintiff may claim relief. There cannot be a doubt that this bill states a case which is entirely fit and proper, if it be proved, for the interference of a court of equity. Nothing is more common than for courts of equity, upon bills filed for the purpose, to set aside conveyances made to defraud judgment creditors. It is a case peculiarly belonging to its jurisprudence, and adequate and complete relief cannot be obtained at law."

In Gould v. Gould [Case No. 5,637], the same learned judge in 1844 said, "That this court is competent in point of jurisdiction to grant relief in this case, if fully made out in proof, notwithstanding similar relief may be attainable in the state court is a matter upon which I entertained no doubt. This court possesses full jurisdiction in equity in all cases of fraud, including fraud in obtaining judgments and decrees in other courts, and is not limited in its exercise to cases where by the state laws no relief can be granted by the state courts. The jurisdiction is concurrent with the state courts in all such cases. I know of but a single exception which has been allowed, and that is, fraud in obtaining a will of real or personal estate. Even this exception has been thought to stand more upon authority than principle. In the case of Gaines v. Chew, 2 How. [43 U. S.] 645, the supreme court of the United States said, 'In cases of fraud, equity has a concurrent jurisdiction with a court of law, but in regard to a will charged to have been obtained through fraud this rule does not hold. It may be difficult to assign any very satisfactory reason for the exception.'"

Washington, J., in Harrison v. Rowan [Case No. 6,143], says, "Proceeding then upon the ground of the established jurisdiction of the court of chancery, we know there are a number of cases in which a concurrent jurisdiction is exercised by the two courts, and in many of them the ground of the equity jurisdiction is not that the common law courts are incompetent to afford a remedy, but that such a remedy is less complete than the court of equity from the nature of its organization is capable of affording. Cases, for example, of fraud * * * are clearly cognizable in the common law courts, and yet the court of chancery has always exercised a concurrent jurisdiction over them upon the ground above mentioned. We hold it therefore to be perfectly clear that when a case is otherwise proper for the jurisdiction of a court of equity, it is no objection to its exercise that the party may have a remedy at law. The inquiry must always be, whether the case is within any of the general branches of equity jurisdiction as claimed and exercised by that court."

In Smith v. McIver, 9 Wheat. [22 U. S.] 532, Chief Justice Marshall recognizes the principle "that courts of equity have concurrent jurisdiction with courts of law in all matters of fraud."

The objection, that this bill is to recover merely a claim for so much money, is disposed of by Shawhan v. Wherrett, 7 How. [48 U. S.] 641, which was a bill in equity brought by an assignee in bankruptcy under act of 1841, charging, that the respondents being creditors of the bankrupt had filed their bill prior to the commencement of proceedings in bankruptcy before the state court in Kentucky, claiming that a certain conveyance of the bankrupt was fraudulent and void as to his creditors; that the court had decided the same to be void, and ordered the property to be sold for the benefit of creditors, and had since proceeded to sell the real and personal estate of the bankrupts and that the

defendants claimed a lien upon the proceeds of the sales by virtue of their proceedings in the state court. The assignee by his bill prayed as to the movable property, which was of the bankrupt, and which the defendant had caused to be sold under the decree of the state court, that the defendant be adjudged to pay to him the amount of said sales. Such was the decree of the district court, and it was affirmed by the supreme court of the United States. The whole controversy in this suit in equity was respecting the pro ceeds from sales of the personal estate, which had passed to the assignee unincumbered by any lien as was claimed by the respondents. It could have been determined in a suit at law whether the lien existed or not in favor of the respondents upon these proceeds, and if the lien did not exist, the value of the property or the amount realized from its sale could in such a suit have been recovered as damages, but the court sustained the bill, as it was proper to determine as to the existence of the alleged lien, just as in the present case it is proper for the court to determine whether the transactions of the parties vested a good title to the money and horse in these respondents, or whether it was void for fraud, and thereby the respondents rendered accountable for the property or its value to the complainant.

In Chemung Canal Bank v. Judson, 8 N Y. 263, the validity of a decree of the district court of the United States in equity proceedings under the former bankrupt act came before the court of appeals in New York for decision. By this decree a voluntary preference given by the bankrupt to the bank was adjudged fraudulent and void and set aside, and damages to the amount of $6,796, decreed to the assignee, that being the sum which had been received by the bank under the preference. The court of appeals (page 263) declared "That the proceeding before the district court was one clearly of equity jurisdiction. The object of it was to set aside the voluntary assignment made previous to the petition in bankruptcy, and to call the voluntary assignee and the plaintiff to account for what they had received in fraud of the bankruptcy."

In 1 Daniell. Ch. Pr. 576, it is laid down, that amongst other cases in which courts of equity and courts of law entertain concurrent jurisdiction are those arising from frauds; therefore when fraud is made the ground for the interference of the court a demurrer will not hold.

Judge Story says (Story, Eq. Jur. § 440), "We may conclude this head by calling the attention of the reader to the remark, which has been necessarily introduced in another place, that courts of equity will exercise a concurrent jurisdiction with courts of law in all matters of fraud, excepting only of fraud in obtaining a will, which if of real estate is constantly referred to a court of law to decide it. in the shape of an issue of devisavit vel non; and which if of personal estate, is in England cognizable in the spiritual or ecclesiastical courts. * * * No other excepted case is known to exist, and it is not easy to discern the grounds upon which this exception stands in point of reason or principle, although it is clearly settled by authority." In Jones v. Bolles, 9 Wall. [76 U. S.] 349, Mr. Justice Bradley says, "Equity has always had jurisdiction of frauds, * * * and it does not depend on discovery."

Applying the principle of these authorities to the present cause, the bill must be sustained because of its very foundation and ground, which is an alleged fraudulent preference received by the respondents from the bankrupt, contrary to the provisions of the bankrupt act. Whether this transaction was fraudulent or not is the primary matter of investigation, and this the court is to pass upon, and determine whether the respondents are or not chargeable therewith, and so affected by the fraud that the contract must be vacated and wholly set aside by the court, and it be decreed that they have no right to retain in their hands the avails of the fraud as against the assignee in bankruptcy. In the present case, the fraud may be easily established, may be much more susceptible of proof than in cases of a more intricate character; but in all these cases, jurisdiction does not depend on the facility of proof in establishing the fraudulent preference, but on the question of the validity of the respondent's title to the property, and whether or not they hold certain estate, real or personal, by a title fraudulent and void as against the assignee. The alleged fraud gives the court in equity jurisdiction to institute the investigation, and proceed to inquire whether the transaction was in fraud of the provisions of the act, and if it so appears, then by its decree to vacate and annul the entire transaction, and afford such other relief by a decree for damages, or restoration of the property itself as it may think most expedient. As Mr. Justice Washington has remarked, "The inquiry must be whether the case is within the general branches of equity jurisdiction as claimed and exercised by courts of equity." The allegations in the present bill being, that the rights as set up to the fund or property by the respondents were acquired by them in fraud of the bankrupt act, and. the court being called upon by the assignee to so determine, and thereupon to declare them null and void, the case, as I think, is brought within that comprehensive branch of equity jurisdiction of setting aside and vacating conveyances made by a debtor in fraud of his creditors. In such cases, courts of equity grant relief upon the ground of fraud established by presumptive evidence, which evidence courts of law would not always deem sufficient proof to justify a verdict at law. Story, Eq. Jur. § 190. So far as I am advised, the practice of the district courts of the United.

States in matters of this nature arising under the present bankrupt act has been in conformity with these views.

In Ahl v. Thorner [Case No. 103], Leavitt, J., sustained a petition in equity by an assignee for the recovery of $4,990, alleged to have been paid by the bankrupt to Thorner in fraud of the provisions of the bankrupt act, the amount having been paid to him to protect him against his liability as an endorser of the notes of the bankrupt. A decree was rendered in favor of the assignee for the amount thus received. This case is in all respects similar to the present on the questions now before the court for its adjudication, being nothing but a bill for invalidating the preference and for restoration of the amounts paid by the bankrupt.

In Campbell v. Traders' Bank [Id. 2,370],— Drummond, J.,—it was decided that an assignee might recover, by a bill in equity, of the respondents, the proceeds of a stock of goods which had been sold by them on an execution against the bankrupt, he having suffered his property to be taken on the execution, and thereby given the bank a fraudulent preference. The learned judge says, "The bank has obtained an unwarrantable preference, the property has been sold and the money paid over to them, and I hold the bank is responsible for the proceeds of the sale. There was besides, a payment of over $300 made on the debt from money in the hands of the Traders' Bank on the 29th of May for which a check was given, and there was $900 of money which was levied on in the hands of the bank by the sheriff at its instance. I think these incidents will have to follow the principal; that the result of the reasoning which has been stated leads necessarily to the conclusion that the same consequences flow from the payment and levy of these sums, and therefore that they would be included as a part of the amount of damages for which the Traders' Bank would be responsible, and also for the interest from the time of the receipt of the money."

Graham v. Stark [Case No. 5,676] was a proceeding in equity by an assignee to have certain chattel mortgages given by the bankrupt set aside as fraudulent preferences under the bankrupt law. The property mortgaged had been disposed of by the respondents. The assignee prevailed in the suit.

Driggs v. Moore [Case No. 4,083] was a bill in chancery brought by an assignee to have certain mortgages given by the bankrupt set aside, and that the mortgagees should be held accountable for the proceeds of the mortgaged property as fraudulent preferences. The decision of the court was, having found that the mortgage was made with a view to giving a preference, "It follows that there must be a decree in favor of complainant for the value of the property taken by defendants. I shall adopt the amount brought on sale, as the fair value * * with interest."

In that case the sale was by defendants before any proceedings in bankruptcy had been instituted, so that it was as clearly a money demand, i. e., for the value of the property mortgaged, as the present claim is for the money received by respondents, defendants, however, in the court first adjudicating that the transaction was fraudulent and vacating by its decree the whole contract.

Scammon v. Cole [Id. 12,433], decided in this district, was in all its essential particulars like the present, being a bill in equity by an assignee to recover certain personal property which had been conveyed to the respondents by the bankrupt as a fraudulent preference, and also for compensation for the value of some of the mortgaged property which had been sold by the mortgagees. The bill was sustained upon both branches.

Wilson v. Brinkman [Id. 17,794] was a case similar to that of Campbell v. Traders' Bank [supra], and with a like result. The assignee by bill in equity recovered the proceeds of the sale.

These decisions are sustained by the opinion of Swayne, J., in Bill v. Beckwith [Case No. 1,406], and although Nelson, J., in Re Bonesteel [Id. 1,627], held that a summary petition in equity was not the proper remedy for the assignee to recover the assets of the estate, yet he granted the assignee leave to amend and file his bill in the usual way for the recovery of the assets.

It is further claimed by the complainant that his bill may be maintained as a bill of discovery. It certainly contains some pointed interrogatories, calling upon the respondents to disclose their knowledge of the standing of the bankrupt at the time of the payment, and of their purpose and object in receiving it from him; but as the bill is framed it cannot be sustained as a simple bill of discovery, as it nowhere, that I have found, contains the necessary allegations that the complainant is unable to prove these facts by other testimony, and that the discovery of them by the respondent is indispensable. Demurrer overruled. Plea adjudged bad.